**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| FIRST STATE INSURANCE COMPANY, | ) | |
| HARTFORD ACCIDENT AND INDEMNITY | ) | |
| COMPANY, NEW ENGLAND INSURANCE | ) | |
| COMPANY and TWIN CITY FIRE INSURANCE | ) | JUDGE: |
| COMPANY, | ) | |
| | ) | |
| 1 HARTFORD PLAZA, | ) | |
| HARTFORD, CT 06155, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| THE PROCTER & GAMBLE COMPANY, | ) | |
| | ) | |
| ONE PROCTOR & GAMBLE PLAZA | ) | |
| CINCINNATI, OH 45202, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Plaintiffs, FIRST STATE INSURANCE COMPANY ("First State") on its own behalf and on behalf of ROYAL INDEMNITY COMPANY under Policy Nos. REB102173 and RED102413 ("Royal"), HARTFORD ACCIDENT AND INDEMNITY COMPANY ("Hartford Accident"), NEW ENGLAND INSURANCE COMPANY ("New England") and TWIN CITY FIRE INSURANCE COMPANY ("Twin City") (collectively, First State, Royal, Hartford Accident, New England and Twin City are referred to herein as "Hartford"), by and through their attorneys, for their Complaint for Declaratory Judgment and Other Relief against Defendant, THE PROCTER & GAMBLE COMPANY ("P&G"), hereby state as follows:

**NATURE OF THE ACTION**

1.      This is an action for declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, wherein Hartford seeks a declaratory judgment as to the parties' respective rights and obligations under various umbrella and excess liability insurance policies issued by Hartford with respect to P&G's environmental liabilities for three separate underlying lawsuits against P&G alleging environmental contamination of groundwater at various locations in the State of New York (the "Underlying Lawsuits") and a claim by the United States Environmental Protection Agency against P&G with respect to alleged environmental contamination at a site located in the State of Michigan (the "EPA Claim").

2.      An actual and justiciable controversy exists between the parties in that Hartford alleges that it does not owe any duty to defend or indemnify P&G with respect to the environmental contamination alleged in the Underlying Lawsuits or the EPA Claim, and upon information and belief, P&G disputes Hartford's position.

**THE PARTIES**

3.      Plaintiff First State is a Connecticut corporation with its principal place of business located in Connecticut.

4.      Plaintiff Hartford Accident is a Connecticut corporation with its principal place of business located in Connecticut.

5.      Plaintiff New England is a Connecticut corporation with its principal place of business located in Connecticut.

6.      Plaintiff Twin City is an Indiana corporation with its principal place of business located in Connecticut.

7.      P&G is an Ohio corporation with its principal place of business located in Cincinnati, Ohio.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a), because the Plaintiffs and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) because P&G resides in this District, and venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3) because P&G is subject to the court's personal jurisdiction in this District.

## THE POLICIES

### A.      THE UMBRELLA POLICIES

10.     Hartford issued the following quota share umbrella liability insurance policies to P&G (collectively, the "Umbrella Policies"):

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| First State | 953707 | 07/01/1983 – 06/30/1984 |
| Royal | REB102173 | 07/01/1983 – 06/30/1984 |
| First State | FB000043 | 06/30/1984 – 06/30/1985 |
| New England | NA000016 | 06/30/1984 – 06/30/1985 |

11.     Each policy period of the Umbrella Policies is subject to a Self-Insured Retention ("SIR") of $2 million per occurrence, $5 million in the aggregate, which applies separately for claims which would have been covered by the General Liability Coverage part and the Products/Completed Operations Liability Coverage part of the Umbrella Policies, but for the amount of the claim.

3

12. Pursuant to the SIR endorsements attached to each of the Umbrella Policies, the SIRs can only be eroded by the insured's payment of defense and indemnity costs that are "paid as a consequence of any occurrence covered" under the Umbrella Policies.

### The 1983-1984 Umbrella Policies

13. Royal Policy No. REB 102173 and First State Policy No. 953707 (collectively, the "1983-1984 Umbrella Policies") contain the same or substantially same insuring agreement which states as follows:

> **1. Coverage**
>
> The Company agrees to pay on behalf of the **Insured** the Ultimate Net Loss, in excess of the applicable **Underlying** or **Retained Limit**, which the **Insured** shall become legally obligated to pay because of:
>
> (a) **Personal Injury**
>
> (b) **Property Damage**
>
> (c) **Advertising Liability**
>
> caused by an **Occurrence** which takes place during the policy period anywhere in the world.

14. The Limit of Liability provision in the 1983-1984 Umbrella Policies provides in relevant part:

> \* \* \*
>
> **3. Limit of Liability**
>
> A. With respect to coverage 1(a), 1(b) or 1(c), the Company's liability shall be only for the **Ultimate Net Loss**, resulting from any one Occurrence in excess of either:
>
> (1) The amount recoverable under underlying insurance as stated in the Declarations and the amount recoverable under any other underlying insurance collectible by the Insured, or
>
> (2) the **Retained** Limit as stated in the Declarations.
>
> \* \* \*
>
> C. All Personal Injury, Property Damage and Advertising Liability arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one Occurrence.

15. The 1983-1984 Umbrella Policies contain the following relevant definitions:

\* \* \*

3. **"Property Damage"** means (a) physical injury to or destruction of tangible property including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **Occurrence.**

\* \* \*

5. **"Occurrence"** with respect to coverage 1(a) and (b) means an accident happening or event, including continuous or repeated exposure to conditions which causes injury to persons or tangible property neither expected nor intended from the standpoint of the insured during the policy period ….

6. **"Ultimate Net Loss"** means: the total sums actually paid or payable as damages in settlement of a claim with the written consent of the Company or in satisfaction of a judgment for which the **Insured** is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the **Insured** with respect to damages covered hereunder. **"Ultimate Net Loss"** does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the **Insured**, (b) office costs and expenses of the **Insured** and salaries and expenses of employees of the **Insured** or (c) general retainer fees of counsel retained by the **Insured**.

\* \* \*

16. The 1983-1984 Umbrella Policies contain the following owned property exclusion:

This policy does not apply to:

\* \* \*

4. to **Property Damage** to property owned by the Insured;

17. The 1983-1984 Umbrella Policies contain the following pollution exclusion:

This policy does not apply:

\* \* \*

10. to **Personal Injury** or **Property Damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis,

toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course of body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

*    *    *

### The 1984-1985 Umbrella Policies

18.     First State Policy No. FB000043 and New England Policy No. NA000016 (collectively, the "1984-1985 Umbrella Policies") contain the following insuring agreement:

### I. COVERAGE

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A. PERSONAL INJURY, as hereinafter defined;

B. PROPERTY DAMAGE, as hereinafter defined:

C. ADVERTISING INJURY OR DAMAGE, as hereinafter defined,

to which this policy applies, caused by an OCCURRENCE, as hereinafter defined, happening anywhere in the world.

19.     The 1984-1985 Umbrella Policies contain the following Underlying Limit-Retained Limits provision:

### II. UNDERLYING LIMIT – RETAINED LIMIT

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A. UNDERLYING LIMIT – an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

B. RETAINED LIMIT – The amount specified in Item 3 I B of the Declarations as the result of any one occurrence not covered by said underlying insurance and which shall be borne by the INSURED.

6

20. The 1984-1985 Umbrella Policies contain the following relevant definitions:

\* \* \*

**H. OCCURRENCE:**

With respect to Coverage I(A) and I(B) "OCCURRENCE" shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE.

\* \* \*

**K. PROPERTY DAMAGE:**

The term PROPERTY DAMAGE wherever used herein means:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

**L. ULTIMATE NET LOSS:**

Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the **Insured**, (b) office costs and expenses of the **Insured** and salaries and expenses of employees of the **Insured** or (c) general retainer fees of counsel retained by the **Insured**.

21. The 1984-1985 Umbrella Policies contain the following owned property exclusion:

This policy shall not apply:

\* \* \*

7

B.  Under Coverage I (B) to injury to or destruction of or loss of (1) property owned by the INSURED or (2) property rented to, occupied or used by or in the care, custody or control of the INSURED to the extent the INSURED is under contract to provide insurance therefore; or (3) any goods, products or containers thereof, manufactured, sold, handled or distributed, or work completed by or for the INSURED, out of which the OCCURRENCE arises.

\*     \*     \*

22.     The 1984-1985 Umbrella Policies contain the following pollution exclusion:

\*     \*     \*

**I.**  this policy shall not apply, unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance:

\*     \*     \*

**VI.** to any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal release or escape is sudden and accidental.

**B.     THE EXCESS POLICIES**

23.     Hartford issued the following excess liability insurance policies (collectively, the "Excess Policies") to P&G:

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| First State | 925312 | 07/01/1977 – 07/01/1978 |
| First State | 926921 | 07/01/1978 – 07/01/1979 |
| First State | 930536 | 07/01/1980 – 07/01/1981 |
| First State | 932429 | 07/01/1981 – 06/09/1982 |
| First State | 927849 | 06/09/1982 – 07/01/1983 |
| First State | 934499 | 07/01/1982 – 07/01/1983 |
| Hartford Accident | 33XS102677 | 07/01/1982 – 07/01/1983 |
| Royal | RED102413 | 12/15/1982 – 07/01/1983 |
| Twin City | TXS100095 | 12/15/1982 – 07/01/1983 |
| Hartford Accident | 33XS103011 | 07/01/1983 – 07/01/1984 |
| First State | EU03174 | 06/30/1985 – 06/30/1986 |

8

24.     Coverage under the Excess Policies attaches excess of coverage under applicable controlling underlying insurance policies and/or applicable SIRs.

25.     Except as otherwise provided by the Excess Policies, the Excess Policies follow the terms, conditions, definitions, and exclusions contained in the applicable controlling underlying insurance policies.

26.     Except for First State Policy No. EU03174, each of the Excess Policies and/or the applicable controlling underlying policies to which they follow form contain the same or substantially same pollution exclusions as are contained in the Umbrella Policies.

27.     The controlling underlying policy to which First State Policy No. EU03174 follows form contains the following pollution exclusion:

**Absolute Pollution/Contamination On Air, Land And Water Exclusion**

In consideration of the premium charged, it is agreed that this policy shall not apply to any liability for Bodily Injury or Property Damage arising out of the discharge, dispersal, release of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

## THE UNDERLYING ENVIRONMENTAL MATTERS

28.     P&G has asserted that it is entitled to coverage under one or more of the Umbrella Policies and/or Excess Policies (collectively, the "Hartford Policies") with respect to the Underlying Lawsuits and the EPA Claim (collectively referred to herein as the "Underlying Environmental Matters").

### A.     THE UNDERLYING LAWSUITS

29.     P&G has sought coverage under one or more of the Hartford Policies with respect to the following three Underlying Lawsuits seeking damages from P&G and other defendants: (i) *Suffolk County Water Authority v. The Dow Chemical Company, et al.,* No. 17-cv-6980, U.S,

District Court for the Eastern District of New York (the "SCWA Lawsuit"); (ii) *Hicksville Water District v. The Dow Chemical Company,* Case No. 1:19-cv-05632, Supreme Court of the State of New York, County of Nassau (the "HWD Lawsuit"); (iii) *New York American Water Company Inc. v. The Dow Chemical Company*, Civil No.: 2:19-cv-02150-NG-RLM, U.S. District Court, Eastern District of New York (the "NYAW Lawsuit").

30.     The Underlying Lawsuits generally allege that P&G and the other named defendants manufactured, sold, and placed into the stream of commerce various products that contain 1,4-dioxane, a synthetic industrial chemical which is alleged to be a highly toxic substance and likely human carcinogen.  The complaints in the Underlying Lawsuits further allege that 1,4-dioxane contained in P&G and the other defendants' products has been discharged and released into the environment, resulting in the contamination of the groundwater that serves as the supply for various public water systems throughout the State of New York.

31.     The SCWA Lawsuit alleges that P&G and the other defendants knowingly and willfully manufactured, promoted, and/or sold products containing 1,4-dioxane to industrial facilities and consumers in Suffolk County, New York, when P&G and the other defendants knew or reasonably should have known that this harmful compound would inevitably reach groundwater, significantly pollute drinking water wells, render drinking water unusable and unsafe, and threaten the public health and welfare, as it has done and will continue to do with respect Suffolk County Water Authority's wells.

32.     The HWD Lawsuit alleges that P&G and the other defendants knew or reasonably should have known that use of their products containing 1,4,-dioxane in their intended manner would result in the spillage, discharge, disposal or release of 1,4-dioxane onto the land or into the

water production wells from which the Hicksville Water District draws its water to supply its customers in Nassau County, New York.

33.     The NYAW Lawsuit alleges that P&G and the other defendants knew or should have known that 1,4-dioxane and their 1,4-dioxane-containing products would result in the release, discharge or disposal of 1,4-dioxane into the environment and would lead to contamination of drinking water supplies and public water supply systems owned and operated by the New York American Water Company.

## B.     THE EPA CLAIM

34.     The EPA Claim involves P&G's potential environmental liabilities with respect to the Cheboygan Tissue Fire Site (the "Cheboygan Site") located at 502 South Main Street, Cheboygan, Michigan.

35.     On September 13, 2023, a massive fire occurred at warehouse located on the Cheboygan Site. As a result of the fire, the EPA conducted an investigation of potential environmental contamination at the Cheboygan Site.

36.     On or about December 7, 2023, the EPA sent correspondence to P&G (the "PRP Letter") advising that the EPA had documented the release or threat of release of hazardous substances, pollutants, and contaminants into the environment from the Cheboygan Site.

37.     The PRP Letter further advised that P&G may have owned or operated the Site or generated or transported hazardous substances that were disposed of at the Site.  As such, the EPA identified P&G as a potentially responsible party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") with respect to the release or threat of release of hazardous substances, pollutants and contaminants into the environment at the Site.

38. The EPA subsequently publicly announced that, as of June 2024, the CERCLA hazardous substances found at the Cheboygan Site have been removed and that the removal action has been completed.

39. The EPA further announced that sampling conducted at the Site confirmed that "no contaminants had affected the soil or groundwater near the site above EPA's action levels. "

40. P&G has asserted that it believes that Hartford Policies provide coverage for the costs it has incurred or will incur to respond to the EPA letter and to address the contamination at the Site.

## COUNT I – DECLARATORY JUDGMENT
### Coverage Is Barred by the Sudden and Accidental Pollution Exclusions

41. Hartford hereby realleges and incorporates Paragraphs 1-40 of this Complaint as if fully set forth herein.

42. All of the Hartford Policies, except for First State Policy No. EU03174, contain a pollution exclusion that precludes coverage for personal injury or property damage arising out the discharge, dispersal, release or escape of contaminants or pollutants, unless such discharge, dispersal, release or escape was sudden and accidental (the "Sudden and Accidental Pollution Exclusion").

43. P&G's potential liability with respect to the Underlying Environmental Matters arises out of the discharge, dispersal, release and/or escape of contaminants or pollutants.

44. P&G has not alleged or shown that the alleged property damage for which it seeks coverage for the Underlying Environmental Matters arose out of any sudden and accidental discharge, dispersal, release or escape of contaminants or pollutants.

45.     The Sudden and Accidental Pollution Exclusions apply to preclude coverage and, therefore, Hartford has no obligation to defend, indemnify or otherwise provide coverage to P&G with respect P&G's liabilities for the Underlying Environmental Matters.

46.     An actual controversy exists between Hartford and P&G concerning whether P&G is entitled to coverage, defense, and/or indemnity under the Hartford Policies with respect to the Underlying Environmental Matters.

**WHEREFORE**, Plaintiffs, First State Insurance Company, Hartford Accident and Indemnity Company, New England Insurance Company and Twin City Fire Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)     Declaring that the Hartford Policies containing a Sudden and Accidental Pollution Exclusion bar coverage for all of P&G's liabilities with respect to the Underlying Environmental Matters;

(b)     Declaring that Hartford has no obligation under the Hartford Policies containing a Sudden and Accidental Pollution Exclusion to defend, indemnify or otherwise provide coverage to P&G with respect to the Underlying Environmental Matters; and

(c)     Awarding Hartford such other and further relief as the Court may deem appropriate and just.

### COUNT II – DECLARATORY JUDGMENT
### Coverage Is Barred by the Absolute Pollution Exclusion

47.     Hartford hereby realleges and incorporates Paragraphs 1-46 of this Complaint as if fully set forth herein.

48.     The controlling underlying policy to which First State Policy No. EU03174 follows form contains an exclusion that bars coverage for bodily injury or property damage arising out of

the discharge, dispersal, release of contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water (the "Absolute Pollution Exclusion").

49. P&G's liability with respect to the Underlying Environmental Matters arises out of the discharge, dispersal, release and/or escape of contaminants or pollutants.

50. The Absolute Pollution Exclusion contained in First State Policy No. EU03174 precludes coverage and, therefore, Hartford has no obligation to defend, indemnify or otherwise provide coverage to P&G with respect P&G's liabilities for the Underlying Environmental Matters.

51. An actual controversy exists between Hartford and P&G concerning whether P&G is entitled to coverage, defense, and/or indemnity under the Hartford Policies with respect to the Underlying Environmental Matters.

**WHEREFORE**, Plaintiffs, First State Insurance Company, Hartford Accident and Indemnity Company, New England Insurance Company and Twin City Fire Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a) Declaring that the Absolute Pollution Exclusion contained in First State Policy No. EU03174 bars coverage for all of P&G's liabilities with respect to the Underlying Environmental Matters;

(b) Declaring that Hartford has no obligation to defend or indemnify or otherwise provide coverage to P&G under the Hartford Policies with respect to the Underlying Environmental Matters; and

(c) Awarding Hartford such other and further relief as the Court may deem appropriate and just.

14

## COUNT III – DECLARATORY JUDGMENT
### No Occurrence – Underlying Lawsuits

52.     Hartford hereby realleges and incorporates Paragraphs 1-51 of this Complaint as if fully set forth herein.

53.     The Hartford Policies only provide coverage for "personal injury," "bodily injury" and/or "property damage" caused by an "occurrence," which is defined in relevant part to mean an accident, happening and/or event which results in property damage that is "neither expected nor intended from the standpoint of the insured."

54.     The Underlying Lawsuits allege that P&G knowingly and willfully manufactured, promoted, and/or sold products containing 1,4-dioxane knowing that this harmful compound would inevitably migrate to and pollute the groundwater and drinking water wells.

55.     P&G's knowing and willful manufacture and sale of products containing 1,4-dioxane that P&G knew would pollute groundwater and drinking wells does not constitute a covered "occurrence" within the meaning of the Hartford Policies.

56.     P&G's knowing and willful contamination of the groundwater and drinking water wells does not constitute a covered "occurrence" within the meaning of the Hartford Policies.

57.     An actual controversy exists between Hartford and P&G concerning whether P&G is entitled to coverage, defense, and/or indemnity under the Hartford Policies with respect to the Underlying Lawsuits.

15

**WHEREFORE**, Plaintiffs, First State Insurance Company, Hartford Accident and Indemnity Company, New England Insurance Company and Twin City Fire Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)     Declaring that environmental liabilities with respect to the Underlying Lawsuits do not constitute a covered "occurrence" within the meaning of the Hartford Policies:

(b)     Declaring that Hartford has no obligation to defend or indemnify or otherwise provide coverage to P&G with respect to the Underlying Lawsuits; and

(c)     Awarding Hartford such other and further relief as the Court may deem appropriate and just.

### COUNT IV – DECLARATORY JUDGMENT
### No Property Damage – EPA Claim

58.     Hartford hereby realleges and incorporates Paragraphs 1–57 of this Complaint as if fully set forth herein.

59.     To obtain coverage under any of the Hartford Policies for the EPA Claim, P&G has the burden of establishing it has incurred liability for third-party "property damage" caused by a covered "occurrence" and that such damage occurred "during the policy period."

60.     The EPA has announced that sampling conducted at the Cheboygan Site has confirmed that "no contaminants" affected the soil or groundwater above EPA action levels, the CERCLA hazardous substances found at the Cheboygan Site have been removed and that the removal action has been completed.

61.     The EPA Claim does not involve damages because of "property damage" within the meaning of the Hartford Policies, and any alleged "property damage" that did occur at the

Cheboygan Site as a result of the 2023 fire did not occur during the applicable policy periods of any of the Hartford Policies.

**WHEREFORE**, Plaintiffs, First State Insurance Company, Hartford Accident and Indemnity Company, New England Insurance Company and Twin City Fire Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)     Declaring that any liabilities that P&G may incur with respect to the EPA Claim do not constitute damages because of "property damages" within the meaning of the Hartford Policies;

(b)     Declaring that any alleged "property damage" that occurred at the Cheboygan Site as a result of the 2023 fire did not occur during the applicable policy period of any of the Hartford Policies;

(c)     Declaring that Hartford has no obligation to defend or indemnify or otherwise provide coverage to P&G with respect to the EPA Claim; and

(d)     Awarding Hartford such other and further relief as the Court may deem appropriate and just.

### COUNT V – DECLARATORY JUDGMENT
### Exhaustion of SIRs and Applicable Limits of Liability

62.     Hartford hereby realleges and incorporates Paragraphs 1–61 of this Complaint as if fully set forth herein.

63.     In the event that coverage is not barred by Counts I- IV, coverage under the Hartford Policies does not attach unless and until all applicable SIRs and/or all underlying insurance policies are exhausted.

64.     P&G and has not established that the applicable SIRs and/or applicable underlying limits of liability have been properly exhausted.

17

65.     Hartford is entitled to a declaratory judgment that, to the extent that coverage is not otherwise barred by the terms, conditions, definitions or exclusions in the Hartford Policies, Hartford has no duty to defend or indemnify P&G with respect to the Underlying Environmental Matters unless and until the applicable SIRs and/or limits of liability of all underlying insurance have been properly exhausted.

66.     An actual controversy exists between the parties as to the extent to which, if at all, coverage under any of the Hartford Policies has attached because P&G has not exhausted the applicable SIRS and/or all of the applicable limits of liability of underlying insurance.

**WHEREFORE**, Plaintiffs, First State Insurance Company, Hartford Accident and Indemnity Company, New England Insurance Company and Twin City Fire Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)     Declaring that, if coverage is not otherwise barred, Hartford has no duty to defend or indemnify P&G with respect to the Underlying Environmental Matters unless and until all applicable SIRs and limits of liability underlying the Hartford Policies have been properly exhausted;

(b)     Declaring whether all applicable SIRs and/or limits of liability underlying the Hartford Policies are properly exhausted; and

(c)     Awarding Hartford such other and further relief as the Court may deem appropriate and just.

### <u>COUNT VI – DECLARATORY JUDGMENT</u><br><u>Other Policy Defenses</u>

67.     Hartford hereby realleges and incorporates Paragraphs 1–66 of this Complaint as if fully set forth herein.

68.     In the event that coverage is not barred and/or limited by Counts I – V, coverage under the Hartford Policies is nonetheless alternatively barred by various other defenses.

69.     Specifically, Hartford requests that this Court determine and declare that Hartford currently has no, and never had any obligation, under the Hartford Policies or otherwise, to defend or indemnify P&G, or to pay for or reimburse any defense and/or indemnity costs, in connection with the Underlying Environmental Matters based on one or more of the following grounds:

(a)     Coverage may be barred to the extent that certain liabilities and/or potential liabilities were incurred by entities that do not qualify as insureds under the Hartford Policies;

(b)     Hartford has no obligation to the extent that certain liabilities and/or potential liabilities were incurred by an entity acquired by the named insured outside the term of the Hartford Policies and/or any applicable controlling underlying policies to which those policies follow form;

(c)     There is no coverage under the Hartford Policies for any injury or damage that does not constitute "personal injury" "bodily injury" or "property damage" within the meaning of the Hartford Policies and/or the underlying policies to which they follow form;

(d)     There is no coverage under the Hartford Policies to the extent that any alleged "personal injury," "bodily injury" or "property damage" arising out of the EPA Claim was not caused by or did not arise out of an "occurrence" within the meaning of the Hartford Policies and/or in any applicable controlling underlying policies to which those policies follow form;

(e)     There is no coverage under the Hartford Policies for claims arising from conditions that were known, or damages that were expected or caused intentionally by or at the direction of an insured;

(f)     Hartford's liability, if any, for claims arising out of continuous or repeated exposure to substantially the same general conditions, and all damages involving the same injurious material or act, is limited to liability for one "occurrence" as that term is defined in the Hartford Policies and/or in any applicable controlling underlying policies to which those policies follow form;

(g)     There is no coverage under the Hartford Policies to the extent that the amounts for which P&G seeks coverage do not constitute "damages" or "ultimate net loss" within the meaning of the Hartford Policies and/or in any applicable controlling underlying policies to which those policies follow form;

(h)     There is no coverage under the Hartford Policies to the extent that coverage for the Underlying Environmental Matters is or may be barred by various exclusions contained in the Hartford Policies and/or any applicable controlling underlying insurance policies to which those policies follow form;

(i)     There is no coverage under the Hartford Policies to the extent that P&G failed to comply with the notice provisions of the Hartford Policies and/or of any applicable controlling underlying policies to which those policies follow form;

20

(j)     There is no coverage under the Hartford Policies to the extent that P&G failed to mitigate, minimize or avoid any damage that they allegedly sustained in connection with the claims for which coverage is sought;

(k)     There is no coverage under the Hartford Policies for any damages on account of "personal injury," "bodily injury," or "property damage" which occurred outside the policy period of one or more of the Hartford Policies and/or any applicable controlling underlying policies to which those policies follow form;

(l)     The Hartford Policies do not provide coverage for conduct which is in violation of law or public policy;

(m)     There is no coverage under the Hartford Policies to the extent that the claims in the Underlying Environmental Matters arose from risks or losses known to the insured prior to the inception dates of one or more of the Hartford Policies;

(n)     There is no coverage under the Hartford Policies to the extent P&G failed to perform all of its obligations and duties and/or comply with all conditions precedent and subsequent under the Hartford Policies and/or in any applicable controlling underlying policies to which those policies follow form;

(o)     Coverage under the Hartford Policies may be barred to the extent that P&G settled any Underlying Environmental Matter without obtaining Hartford's consent;

21

(p)    The Hartford Policies do not provide coverage to the extent the acts, conditions, events and damages which form the basis of the claims against P&G were not fortuitous;

(q)    The Hartford Policies do not provide coverage for fines, penalties, punitive or exemplary damages, or any criminal or malicious acts or omissions of any insured, acting through its servants, agents or employees;

(r)    The Hartford Policies do not provide coverage for equitable, injunctive or other similar non-monetary relief;

(s)    The Hartford Policies do not provide coverage to the extent that P&G made any voluntary payment and/or assumed any obligation, incurred any expense or made any payment that it was not legally obligated to pay;

(t)    Hartford's liability, if any, is limited to the amount described in the limits of liability provisions of the Hartford Policies and the Hartford Policies only provide coverage up to the stated per "occurrence" and aggregate limits of liability.

70.    An actual and justiciable controversy exists between Hartford and P&G concerning their respective rights and liabilities under the Hartford Policies.

**WHEREFORE**, First State Insurance Company, Hartford Accident and Indemnity Company, New England Insurance Company and Twin City Fire Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)    Declaring that the Hartford Policies do not provide coverage for the Underlying Environmental Matters;

22

(b)    Declaring that Hartford does not have any obligation, and has never had any obligation, under the Hartford Policies or otherwise, to defend, reimburse defense costs or indemnify P&G in connection with any claims, liabilities, loss or damages relating to the Underlying Environmental Matters; and

(c)    Awarding Hartford such other and further relief as the Court may deem appropriate and just.

[Signature Block on Next Page]

DATED this 4th day of December, 2024

Respectfully Submitted,

FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, NEW ENGLAND INSURANCE COMPANY and TWIN CITY FIRE INSURANCE COMPANY


By: */s/ David C. Ahlstrom*
    David C. Ahlstrom (85784)
    LEWIS BRISBOIS BISGAARD & SMITH, LLP
    250 E. 5th Street, Suite 2000
    Cincinnati, OH 45202
    Tel: (513) 808-9911
    Fax: (513) 808-9912
    David.Ahlstrom@lewisbrisbois.com

    -and-

By: */s/ Dena Economou*
    Dena Economou (*pro hac vice* pending)
    Gerald E. Ziebell (*pro hac vice* pending)
    KARBAL COHEN ECONOMOU SILK & DUNNE, LLC
    200 S. Wacker Drive, Suite 2550
    Chicago, IL 60606
    Tel: (312) 431-3700
    Fax: (312) 431-3670
    deconomou@karballaw.com
    gziebell@karballaw.com
    *Attorneys for Plaintiffs,*
    *First State Insurance Company,*
    *Hartford Accident and Indemnity Company,*
    *New England Insurance Company and*
    *Twin City Fire Insurance Company*

24